NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ALVON CRUSE,

    Plaintiff,

v.

STATE OF NEW JERSEY, et al.,

    Defendants.

Civil Action No. 12-4055 (JAP)

**OPINION**

---

PISANO, District Judge.

This is a 42 U.S.C. § 1983 case brought by Plaintiff Alvon Cruse ("Plaintiff") against Defendants the State of New Jersey, the New Jersey Department of Corrections, John Doe, M.D. 1-5; John Doe 1-5; and John Doe Corp. 1-5 (collectively, the "Defendants"). Currently before the Court is a motion for summary judgment brought by Defendants the State of New Jersey and the New Jersey Department of Corrections (together, the "State Defendants") [ECF no. 11]. The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment.

## I.    **Background**[1]

Plaintiff Alvon Cruse was incarcerated within the New Jersey Department of Corrections ("NJDOC") from January 15, 2010 until September 24, 2012. Plaintiff's medical records indicate that upon his initial reception and medical intake at NJDOC's Central Reception and Assignment Facility, the only allergies indicated were to eggs and lactose. *See* Declaration of

---

[1] The background is drawn from the undisputed facts set forth in the State Defendants' Statement of Material Facts Pursuant to Rule 56.1, Plaintiff's Statement of Material Facts, and the State Defendants' Response to Plaintiff's Undisputed Facts and attached exhibits.

Ralph Woodward, MD ("Woodward Decl.") ¶ 5; Woodward Decl. Ex. A. According to Mr. Cruse, he also told the prison officials that he was allergic to Vancomycin at his initial intake. *See* Deposition of Alvon Cruse ("Cruse Dep.") 26:5-20, Apr. 29, 2013.

While in the custody of NJDOC, Mr. Cruse was prescribed Vancomycin. *See* Cruse Dep. 12:13-19. On June 7, 2010, he was transported to and admitted into Saint Francis Medical Center for evaluation. *See* Woodward Decl. ¶¶ 6-7; Cruse Dep. 22:13-24:11. Mr. Cruse's kidneys shut down and, as a result, he alleges he lost the majority of his kidney function. *See* Cruse Dep. 24:12-26:4. He remained at Saint Francis until his discharge on June 20, 2010. Woodward Decl. ¶ 7. The only allergies listed on Mr. Cruse's NJDOC medical records up through his hospitalization in June 2010 are allergies to eggs and lactose. *Id.* at ¶ 8. His NJDOC medical records do not list a possible allergy to the medication Vancomycin until October 6, 2010. *Id.* at ¶ 9.

On or about April 12, 2012, Plaintiff Cruse filed a complaint in the Superior Court of New Jersey, Law Division, Mercer County. In his Complaint, Plaintiff alleges various common law claims, as well as violations of "his rights under the United States Constitution, the Federal Civil Rights, laws, title 42 of the U.S.C., sections 1983, and 1985 et seq., and corollary provisions of the New Jersey State Constitution and Civil Rights, Laws of the State of New Jersey." On June 4, 2012, the State of New Jersey and the NJDOC were served, and they filed a timely Notice of Removal to this Court on June 29, 2012 [ECF No. 1]. On June 7, 2013, the State Defendants filed this motion for summary judgment [ECF No. 11]. The State Defendants argue that as state entities, they are not "persons" amenable to suit under 42 U.S.C. § 1983 or the New Jersey Civil Rights Act (the "NJCRA"). They also argue that the § 1983 violations are premised on an inappropriate theory of *respondeat superior*. The State Defendants contend that

Plaintiff's claim for a violation of § 1985 fails to properly state a claim. They also assert that Plaintiff's state law claims are barred because Plaintiff has failed to file a Notice of Tort Claim. Finally, they move for the John Doe defendants to be dismissed. Plaintiff opposes[2] this motion, arguing that there are material facts in dispute that prevent summary judgment from being entered.

## II.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine issue of material

---

[2] Under Local Rule 56.1(a), a party opposing summary judgment must provide "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion" in its opposition brief. L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of summary judgment motion." *Id.* Although Plaintiff includes a facts section in his opposition brief, he fails to address each paragraph of the State Defendants' statement of undisputed facts, as required by Rule 56.1(a). As such, Plaintiff has failed to dispute the State Defendants' Statement of Material Facts and the Court accepts as true all of the facts set forth in the State Defendants' Statement of Undisputed Material Facts and attached exhibits.

fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Legal Discussion

#### A. "Person" Amenable to Suit under Section 1983, Section 1985, or the NJCRA

The State Defendants argue that Plaintiff's claims pursuant to 42 U.S.C. § 1983, as well as his corollary claims under the NJCRA, are flawed because the State of New Jersey and the NJDOC are not "persons" amenable to suit under § 1983. This argument does not involve a factual analysis of the events that gave rise to this cause of action; rather, it requires a legal analysis of whether Plaintiff may sue the State of New Jersey and the NJDOC for violations of § 1983. This Court finds that, as a matter of law, Plaintiff may not do so.

In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The language of the statute makes clear that a § 1983 suit may only be brought against a defendant whom is considered a "person" within the meaning of § 1983. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988). It is well-established that neither a state nor a state agency is considered a "person" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). In *Will*, the Supreme Court analyzed whether states could qualify as persons under § 1983, and squarely held that "neither a State nor its officials acting in their official

4

capacities are 'persons' under § 1983." *Id.* at 71. While the language of *Will* did not directly state that a state agency is not a person under § 1983, the conclusion was implicit, as the applicable defendant in *Will* was the Michigan Department of State Police. Therefore, as subsequently interpreted by the Supreme Court, "*Will* establishes that the State and arms of the State. . . are not subject to suit under § 1983 in either federal or state court." *Howlett v. Rose*, 496 U.S. 356, 365 (1990).

Here, the only named defendants in the case are the State of New Jersey and the NJDOC. It is axiomatic that the State of New Jersey is not "person" within the meaning of § 1983. The NJDOC, as an arm of the State, is likewise not a "person" amenable to suit under § 1983. *See Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 539 (D.N.J. 1989) (holding the same). Accordingly, because neither the State of New Jersey nor the NJDOC are "persons" under § 1983, Plaintiff's claims in Count Five for violations of § 1983 are meritless.

This argument applies with equal force to Plaintiff's § 1985 claims as the same analysis applies to the use of the word "person" in both § 1983 and § 1985. *See, e.g.*, *Sykes v. California (Dep't of Motor Vehicles)*, 497 F.2d 197, 201-02 (9th Cir. 1974); *Cipolla v. Hayman*, No. 10-889, 2013 U.S. Dist. LEXIS 42905, at *20 (D.N.J. Mar. 26, 2013); *N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, No. 09-683, 2010 U.S. Dist. LEXIS 66605, at *26 (D.N.J. June 30, 2010); *Veres v. County of Monroe*, 364 F. Supp. 1327, 1328-31 (E.D. Mich. 1973), *aff'd mem.*, 542 F.2d 1177 (6th Cir. 1976). Because "two or more *persons*" must conspire for liability to attach under § 1985, and because neither the State of New Jersey nor the NJDOC are "persons" that can be held liable under § 1983, the State Defendants cannot be liable under § 1985. Therefore, any attempt by Plaintiff to allege a violation of § 1985 in Count Five of his Complaint similarly fails.

Likewise, Plaintiff Cruse's claim for violations of the NJCRA, *N.J.S.A.* 10:6-2, by the State and NJDOC is also deficient. The NJCRA "was modeled after § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." *Martinez v. New Jersey*, No. 11- 2223, 2012 U.S. Dist. LEXIS 80298, at *18 (D.N.J. June 8, 2012) (citing *Celestine v. Foley*, No. 10-1775, 2010 U.S. Dist. LEXIS 132511, at *22-23 (D.N.J. Dec. 14, 2010)). Under the NJCRA, like under § 1983, "the plain language of the NJCRA imposes liability on any 'person' who violates a plaintiff's civil rights under color of law." *Didiano v. Balicki*, 488 F. App'x. 634, 637 (3d Cir. 2012). The Third Circuit has disagreed with the contention that a "person" under NJCRA should be defined differently than it is under the context of § 1983. *See id.* at 638. Rather, the definition of "person" under the NJCRA "does not include the State or defendants which are the functional equivalent of the State." *Id.* (citing *N.J.S.A.* 1:1-2). Therefore, neither the State nor the NJDOC, as a New Jersey state agency, are a person subject to liability under the NJCRA.

Accordingly, all of Plaintiff's claims against the State of New Jersey or the NJDOC that are based upon violations of Section 1983, Section 1985, and the NJCRA are meritless. Because judgment will be entered in favor of the State Defendants on these counts, this Court will not consider these Defendants' other arguments for summary judgment on the § 1983 claims.[3]

---

[3] Namely, the State Defendants argue that Count Six of the Complaint is an alleged violation of § 1983 impermissibly based upon a theory of *respondeat superior.* This argument is rendered moot because the named Defendants in this case—the State nor the NJDOC—are not "persons" amenable to suit under § 1983, and the John Doe defendants will be dismissed from this matter, as discussed below. Plaintiff, however, argues that governmental liability is appropriate here because it is not based upon a theory of *respondeat superior*, but rather is based upon a widespread practice of deliberate indifference to a medical condition. Pl.'s Opp. Br. 4-5 (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978)). This argument is misplaced. *Monell* creates liability under § 1983 for municipalities and other local government entities that have a policy, practice, or custom in place that causes a constitutional harm. *See Monell*, 436 U.S. at 90. This does not apply to states, state agencies, and state officers acting in their official capacities. *See Will*, 491 U.S. at 64, 67 n.7 (explaining that a municipality is different than a state in terms of liability under § 1983). Therefore, any claim for liability under *Monell* lacks merit.

### B. Violation of a Constitutional Right

In order to establish a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 49 (citations omitted). Even if the named Defendants were proper parties under Section 1983, Section 1985, or the NJDOC, a review of the record shows that a violation of a constitutional right has not been proven.

The Eighth Amendment proscribes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Mere negligence in either "diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 105-06 (explaining that medical malpractice is not a constitutional violation). *See also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) ("In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, it is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference.") (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Rather, a prison official can only be found liable under the Eighth Amendment when the official acts with deliberate indifference to serious medical needs, meaning "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of

serious harm."). The relevant inquiry must be whether the defendant's conduct "shocks the conduct." *Nicini v. Morra*, 212 F.3d 798, 812 (3d Cir. 2000).

Plaintiff Cruse would have the burden of proving at trial that the unnamed prison medical personnel were deliberately indifferent to the serious medical needs of Plaintiff, which, as *Farmer* instructs, would involve showing that the officials knew or were aware of Plaintiff's allergy. Beyond Plaintiff's raw claim that the medical personnel were indifferent to his medical needs, a review of the record shows an almost complete lack of any evidence to support Plaintiff's claim. The only evidence that Plaintiff presents in support of this claim is his deposition testimony, in which he states that he told the medical department when he entered the prison system that he was allergic to Vancomycin. *See* Cruse Dep. 26:3-20. It is undisputed, however, that Plaintiff's medical records contained no indication that Plaintiff was allergic to Vancomycin. The record reveals no facts, and indeed no allegation has been made, that the Plaintiff told any of the medical personnel who had been treating him when he was prescribed the Vancomycin that he was allergic to the drug. The record is also devoid of any evidence that any of the personnel treating Plaintiff would otherwise been aware or should have been aware of this allergy. *See* Cruse Dep. 20:1-13. *Compare Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (finding sufficient evidence existed to survive a motion for summary judgment on the issue of deliberate indifference where the plaintiff testified that he informed a prison health services employee that he was insulin-dependent diabetic, this fact was noted on his medical chart, and plaintiff had a note from a physician indicating he needed insulin). It would be a stretch of the imagination to even infer that the unknown doctor[4] who eventually

---

[4] Perhaps even more glaringly is the absence of any named medical personnel in this action of whom this Court could analyze their conduct to determine if they acted with deliberate indifference. The deliberate indifference standard is "a subjective standard of liability consistent with recklessness." *Nicini*, 212 F.3d at 811. It is impossible for this Court to analyze an individual's subjective state of mind without knowing who the acting individual is.

prescribed Vancomycin to Plaintiff knew or must have known that Plaintiff Cruse was allergic to the drug. Neither the record nor Plaintiff's brief addresses this issue.

If anything, the conduct described on the record depicts negligent conduct on the part of the medical personnel at the NJDOC. Significantly, Plaintiff himself characterizes the alleged failure by the medical personnel to indicate on Plaintiff's medical records that he was allergic to Vancomycin as "negligence, which negligence led him to the harm he suffered, to wit, the loss of a substantial portion of his kidney function." Pl.'s Opp. Br. 1. However, "mere allegations of malpractice do not raise issues of constitutional import." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970) ("[A]n allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983. More is needed than a naked averment that a tort was committed under the color of state law. . . ."). In sum, the lack of any evidence showing "deliberate indifference" on behalf of the medical personnel proscribes Plaintiff's Eighth Amendment violation.

### C. New Jersey Tort Claims Act

The New Jersey Tort Claims Act (the "NJTCA") was enacted with the purpose of abrogating the rule of immunity for public entities and public employees in certain limited situations. *N.J.S.A.* 59:1-2; *Marcinczyk v. State of New Jersey Police Training Com'n*, 203 N.J. 586, 594-95 (2010). The NJTCA sets forth a procedural framework for making claims against public entities and public employees. *See N.J.S.A.* 59:8-1, *et seq.* The filing of a notice of claim is a prerequisite to maintaining a suit against a public entity. *See N.J.S.A.* 59:8-3. The NJTCA establishes precise time limitations within which a claim may be brought against public entities and employees. *N.J.S.A.* 59:8-8. By its own terms, the statute requires that a notice of claim be

presented no later than ninety days after the accrual of the cause of action; a failure to file the claim within ninety days will cause the claimant to be "forever barred from recovering against a public entity or public employee." *N.J.S.A.* 59:8-8. Thus, a failure to comply with the NJTCA's notice of claim provisions will lead to the dismissal of a claim. *See Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 621 (D.N.J. 2005).

Here, the Defendants seek dismissal of Plaintiff's state law claims against them on the grounds that Plaintiff has failed to comply with the notice requirements of N.J.S.A. 59:8-8. In support of their motion, the State Defendants submit the declaration of Donna Ross, who is employed by the State of New Jersey, Department of Law and Public Safety, as an Attorney Assistant (the "Declaration of Diana Ross (Ross Decl.)"). Ms. Ross states that she conducted a search records and has confirmed that there is no record of a notice of tort claim filed by Plaintiff in the Division of Law Notice of Claims System, which is a searchable database of notice of tort claims filed with various state agencies, including the Department of Corrections. *See* Ross Decl. ¶¶ 3-4.

In his opposition, Plaintiff fails to address this issue and how it affects his state law claims against the Defendants. Rather, Plaintiff simply addresses the inapplicability of the NJTCA to "claims alleging the violation of State or Federal Constitutional provisions." Pl.'s Opp. Br. 2. While it is true that the notice requirement does not apply to alleged violations of federal and state constitutional rights, *see Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 357 (App. Div. 1993) (citing *Fuchilla v. Layman*, 109 N.J. 319, 330 (1988)), such an exception does not change the requirement to file a notice of tort claim upon the state law claims that Plaintiff has asserted here. Plaintiff was required to file a notice of tort claim in regards to his tort claims he has alleged in Counts One through Five. His failure to do

so bars these claims. Accordingly, the State Defendants' motion for summary judgment as to Plaintiff's state law claims is granted and Counts One through Five against the State Defendants are dismissed.

### D. Dismissal of John Doe Defendants

In his Complaint, Plaintiff named "defendant doctors John Does 1-5, fictitious names whose true identities are presently unknown; Jane Does 1-5, fictitious names whose true identities are presently unknown; and ABC Corporations 1-5, fictitious names whose true identities are presently unknown." Compl. ¶ 2. Defendants have moved for the dismissal of the John Doe defendants in this case.

"Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. Pa. 1998) (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990)) (citations omitted). Pursuant to Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may, at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Rule 21 has been used "to exclude John Doe parties from an action when appropriate." *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). The Rule has also been "invoked to drop John Doe defendants from a case when plaintiffs failed to include specific allegations of wrong doing committed by these defendants." *Hightower v. Roman, Inc.*, 190 F. Supp. 2d 740, 754 (D.N.J. 2002). Generally, "[f]ictitious party names may be used at least until reasonable discovery permits the actual defendants to assume their places. However, fictitious names must eventually be dismissed, if discovery yields no identities." *Williams v. State Div. of State Police*, Civ. No. 10-3478, 2012 U.S. Dist. LEXIS 72457, at *18-19 (D.N.J. May 24, 2012) (quoting *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (E.D. Pa. 1997)); *Adams*, 461 F. Supp. 2d at 271.

Therefore, at the end of discovery, unnamed fictitious parties should be dismissed if left unidentified.  *See Hindes*, 137 F.3d at 155; *Atlantic Used Auto Parts*, 957 F. Supp. at 625.

Plaintiff initiated this case in April 2012, and Defendants removed this matter to this Court in June 2012.  Fact discovery, initially scheduled to be completed by January 21, 2013 was eventually completed on May 15, 2013.  *See* ECF Nos. 5, 6.  Defendants assert that they provided Plaintiff with a copy of his electronic medical records from NJDOC as part of their initial disclosers on or about October 18, 2012.  Defs.' Br. 20.  Plaintiff does not dispute this assertion.  Thus, despite having the relevant documents from which to extract the identities of the intended parties for nearly eight months before this motion was filed, Plaintiff has failed to file either an amended complaint or any motion to amend the pleadings.  Plaintiff has failed to even offer an argument here for why the John Doe parties should not be dismissed.  Therefore, because discovery has been closed for months and Plaintiff has yet failed to establish the identities of his John Doe defendants, nor set forth any evidence of wrongdoing by them, the unnamed individual and entities will be dismissed from this action.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: December 31, 2013